Argued and submitted November 22, 1989, reversed and remanded July 18, 1990

STATE OF OREGON,
*Plaintiff,*

*v.*

LORETTA S. ROGERS,
*Defendant.*

In re Contempt of Kevin Romel Jones.

STATE OF OREGON,
*Respondent,*

*v.*

KEVIN ROMEL JONES,
*Appellant.*

(C8903-31548; CA A60399)

794 P2d 1245

Robert A. Swider, Portland, argued the cause and filed the brief for appellant.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

Deits, J., dissenting.

## RICHARDSON, P. J.

Kevin Jones appeals a judgment of contempt under which he received a sentence of six months incarceration. He argues that the court erred by not advising him of his right to counsel and by not making findings to support the contempt conclusion or the enhanced penalty. We reverse and remand.

Appellant was subpoenaed to testify for the state in the criminal trial of Loretta Rogers. He appeared at the proceedings accompanied by an attorney who had represented him in a sentencing matter earlier that day. The attorney told the court that he was not representing him but was merely accompanying him as a courtesy. The attorney said that he had talked to appellant about his testifying and that appellant did not want to testify, because he was afraid that he might incriminate himself. The lawyer added that he had explained to appellant that he would not be questioned about events that might prove incriminating. The lawyer did not participate any further. The court questioned appellant about his reasons for declining to testify and, after concluding that he had no constitutional right to refuse to testify, warned him that if he did not testify, he would be held in contempt and imprisoned. After a recess in the criminal case, appellant was again advised by the court of the possibility of contempt and asked if he would testify. Appellant said he did *not* understand, but would not testify. The court held him in contempt and imposed a sentence of six months.

■■ Appellant first argues that the court erred by not advising him of his right to counsel. Implicit in that contention is that he was also entitled to appointed counsel. ORS 33.095(2) provides, in relevant part:

> "If the alleged contemnor is not represented by counsel when coming before the court, the court shall inform the alleged contemnor of the right to counsel, and of the right to appointed counsel if the alleged contemnor is indigent and the proceedings may result in any incarceration."

That provision applies when an alleged contemnor appears without counsel and has a right to counsel. Although appellant was accompanied by an attorney when he first appeared, the attorney did not represent him during the contempt proceeding. In fact, the attorney left shortly after arriving and was not present when the court examined appellant regarding his

refusal to testify. Under these facts, it cannot be said that he was represented by counsel during the contempt proceeding.

Under ORS 136.617, an alleged contemnor has a right to counsel when he refuses to testify on the basis of a fear of self-incrimination.[1] *State ex rel Spencer v. Howe,* 281 Or 599, 602, n 1, 576 P2d 4 (1978). Accordingly, when a court exercises the authority to hold a witness in contempt for refusing to testify, the witness is entitled to counsel, if the refusal is based on a fear of self-incrimination. It follows that, under those circumstances, a court is obligated by ORS 33.095(2) to advise the alleged contemnor of his right to counsel and to appointed counsel, if he is indigent.

■ The state contends that appellant did not have a right to counsel under ORS 136.617, because his refusal to testify was not based on the fear of self-incrimination. It argues that appellant's

> "refusal to testify was based on his forgiveness of the person who allegedly shot at him. His refusal was not based on a claim of privilege. Once he understood that he had no right to claim a Fifth Amendment privilege * * *, he no longer ever mentioned the Fifth Amendment but relied instead on forgiveness."

That conclusion rests, however, on facts that the trial court learned by questioning appellant *after* he had asserted his refusal to testify based on the Fifth Amendment. The right to avoid self-incrimination is an essential right that is recognized under both the federal and state constitutions. US Const Amend V; Or Const Art I, § 12. The right to counsel afforded by ORS 136.617 is an implicit recognition that proper assertion and presentation of appropriate facts to establish the privilege not to testify can be complex. The right to assistance guaranteed by ORS 136.617 would be hollow if it attached only

---

[1] ORS 136.617 provides, in pertinent part:

"In any criminal proceeding before a court of record * * * if a witness refuses to testify or produce evidence of any kind on the ground that the witness may be incriminated thereby, the prosecuting attorney may move the court to order the witness to testify or produce evidence. The court shall forthwith hold a summary hearing at which the prosecuting attorney shall show reasonable cause to believe the witness possesses knowledge relevant to the proceeding, or that no privilege protects the evidence sought to be produced. The witness may show cause why the witness should not be compelled to testify or produce evidence. * * * The witness shall be entitled to be represented by counsel at the summary hearing."

after the court, and presumably the prosecutor, had examined the witness about his assertion of a constitutional right to refuse to testify.

When appellant first indicated that he would refuse to testify on "Fifth Amendment grounds," he had a right to counsel under ORS 136.617. Because he was not represented by counsel, the court was obligated, under ORS 33.095(2), to advise him of this right and to appoint counsel if he was indigent. It did not, and he is, therefore, entitled to a new hearing. *Van Eck and Van Eck,* 95 Or App 13, 16, 767 P2d 464 (1989).[2]

Reversed and remanded.

**DEITS, J.,** dissenting.

I agree with the majority that, under ORS 136.617, an alleged contemnor has a right to counsel when he refuses to testify on the basis of a fear of self-incrimination. However, I dissent, because I do not agree that appellant refused to testify on that ground.

The trial court told appellant that he would be held in contempt if he refused to testify. Appellant interrupted the trial court, asking, "excuse me, ma'am. Can I ask a question? Do I have a Fifth Amendment? Can I testify on the Fifth Amendment?" The trial court explained to him that he would not be asked questions about events that might incriminate him. Appellant said nothing more about the Fifth Amendment and never asserted that as a basis for refusing to testify.

After a short recess, appellant appeared again in court but was no longer accompanied by the lawyer who had previously been with him. The court asked him if he intended to testify, and he said that he did not. Before holding appellant in contempt, however, the court reiterated its reasoning as to why his testimony would not incriminate him. This colloquy occurred:

"THE COURT: You are a complaining witness, an alleged victim. Supposedly something was done to you in the course of this shooting event we're all talking about, and that's

---

[2] Because we reverse the order, we need not review appellant's remaining challenges to the court's findings.

the only thing you're going to be permitted — they'll be permitted to ask you.

"MR. JONES: Okay, ma'am. Let me explain it to you this way: I forgive this person.

"THE COURT: That's one thing. The government, though has to bring their case. This is not you suing somebody, or forgiving them, or not forgiving Mr. McDonald, this is just simply the government needs to know what happened, and that's why they've subpoenaed you. And if you had a right to remain silent, a Fifth Amendment right, I'd be the very first person in line to see that it was honored. It's just that you don't have one, and it puts me in a position of having to find you in contempt, and keeping you here in Portland.

"MR. JONES: Okay, ma'am. Well, let me explain something else to you.

"THE COURT: Okay.

"MR. JONES: When he explained all this to me, he said —

"THE COURT: The DA?

"MR. JONES: Yes.

"THE COURT: Okay.

"MR. JONES: When he explained this all to me, he said it was because I signed a complaint form, right?

"THE COURT: Your name isn't on the form. Let me explain something to you. This comes out of the grand jury of Multnomah County. I have the instrument here that charges Miss Rogers and Mr. McDonald with this, and it's signed by the lady who was the foreman of the grand jury and a Deputy District Attorney. Your signature appears no place on it. And it is entitled State of Oregon v. Loretta Rogers, and that's not you.

"MR. JONES: But who filed the complaint?

"THE COURT: The State of Oregon. The State of Oregon files complaints and brings things to the grand jury on behalf of citizens; citizens only file private actions where they sue somebody. You're not suing anybody. See, that's one of the reasons you really got no right to remain silent. And you're welcome to say what's on your mind if you want, you know, if you're going to take the oath and testify, but you are obligated to testify in this case.

"MR. JONES: Well, somebody's already testified, right?

"THE COURT: Yes, Mr. McDonald testified. That's one person, but he's not you, and not your perspective on this.

"MR. JONES: Oh, so you need me?

"THE COURT: I do need you to testify.

"MR. JONES: Well, okay, I don't want to testify, ma'am. I told you I forgive this person.

"THE COURT: That's one thing, but you are obligated to testify. Now, he's here pursuant to a signed court order transporting him here for the purposes of testifying in this case. And his — and if I understand you, and I want to be real clear, Mr. Jones, you are refusing to be sworn, and you're refusing to testify?

"MR. JONES: Yes."

The state contends that appellant's "refusal to testify was based on his forgiveness of the person who allegedly shot at him." I agree. The majority dismisses that argument by claiming that appellant's forgiveness came *after* he had refused to testify on the ground that he might incriminate himself. According to the majority, the privilege against self-incrimination is too complex for a defendant to understand and would be meaningless if the court were permitted to ask a defendant for some explanation. The privilege against self-incrimination is complex, and it undoubtedly would be mean-ingless if a witness had to explain it correctly to a judge under every circumstance. However, a trial court should be able to ask a witness for an explanation when, as in this case, the witness was the alleged victim of the crime being tried, there was no risk of incrimination and the witness did not clearly assert the privilege, but just asked questions about it. Here, by explaining the right and asking some relevant questions, the trial court discovered that appellant was not refusing to testify on the basis of the Fifth Amendment. Under the majority's analysis, a defendant is automatically entitled to counsel whenever he asks a question about the Fifth Amendment, even if it becomes apparent that he is not asserting the priv-ilege against self-incrimination.

Because I believe that the trial court acted within its discretion when it made a limited inquiry into appellant's reasons for refusing to testify, I would conclude that appellant did not refuse to testify on the ground of fear of self-incrimination. Accordingly, he did not have a right to

appointed counsel, and the trial court did not err when it did not tell him about that right.

I dissent.